IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


DEXTER SMITH,
    Petitioner,

vs.                                      Case No.:  4:08cv40/SPM/EMT

WALTER McNEIL,
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer seeking dismissal of the petition on the ground that it is untimely (Doc. 14), and Petitioner filed a response to the answer (Doc. 23).  The court permitted Petitioner to supplement the record with additional evidence (*see* Docs. 12, 16).  Petitioner subsequently filed two additional motions to supplement the record (Docs. 24, 25), which shall be granted.

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.        BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed.  Following a jury trial, Petitioner was convicted in the Circuit Court for Leon County, Florida, of DUI Manslaughter (Doc. 1 at 1, Ex. B).  On July 23, 2003, he was sentenced to 10.375 years of incarceration followed by four (4) years of probation (*see* Doc. 1, Ex. B).  Petitioner appealed his

judgment of conviction and sentence to the Florida First District Court of Appeal (First DCA). The appellate court affirmed the conviction and sentence per curiam without written opinion on January 7, 2005, and denied Petitioner's motion for rehearing on February 14, 2005 (Doc. 14, Ex. A). Smith v. State, 906 So. 2d 1064 (Fla. 1st DCA Jan. 7, 2005) (Table).

On October 24, 2005, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 14, Ex. B).[1] The trial court denied the motion in an order rendered on April 12, 2006, and Petitioner appealed the decision to the First DCA (*see* Doc. 1, Ex. B). The appellate court affirmed per curiam without written opinion on February 16, 2007, with the mandate issuing March 14, 2007 (Doc. 1, Ex. C; Doc. 14, Ex. C). Smith v. State, 949 So. 2d 1040 (Fla. 1st DCA Feb. 16, 2007) (Table).

Petitioner filed the instant federal habeas action on January 23, 2008 (Doc. 1 at 15).

II. ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1] In his federal petition, Petitioner does not provide the date he filed his Rule 3.850 motion (*see* Doc. 1 at 4). The copy of the motion included in the state court record submitted by Respondent shows that Petitioner signed the motion in October of 2005, and it was submitted to prison officials for mailing on October 24, 2005 (*see* Doc. 14, Ex. B). The state court stamped the motion as filed on October 31, 2005 (*see* Doc. 14, Ex. B), and the docket sheet submitted by Petitioner shows that the motion was deemed filed on that date (*see* Doc. 23, Ex. B). Pursuant to the "mailbox rule," which the Florida courts apply to post-conviction pleadings filed by pro se prisoners, *see* Haag v. State, 591 So. 2d 614, 617 (Fla. 1992), the motion was filed on the date it was deposited in the prison's mail system, October 24, 2005. *See* Taylor v. Williams, 528 F.3d 847, 850 (11th Cir. 2008) (to determine when a state habeas petition has been "properly filed," the court looks to the applicable state law governing filings). Therefore, this court finds that the motion was filed on October 24, 2005.

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent contends section 2244(d)(1)(A) is the appropriate statutory trigger for the federal limitations. Petitioner's conviction became "final" for purposes of this subsection when the ninety-day period in which to seek certiorari from the United States Supreme Court expired. *See* Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002) (for purposes of § 2244(d)(1)(A), the one-year limitations period began to run when the time expired for filing a petition for certiorari with the United States Supreme Court); Jackson v. Secretary for the Dep't of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002). Because the date of the First DCA's order denying Petitioner's motion for rehearing was February 14, 2005, Petitioner's judgment of conviction became "final" for purposes of section 2244 on May 16, 2005, ninety days later.

Petitioner contends the appropriate statutory trigger is section 2244(d)(1)(B). He asserts that a government-created impediment to his filing existed, namely, confiscation of his legal books and denial of access to a law library and law clerks (Doc. 23). Petitioner states that on August 14, 2006, he was transferred to Jefferson Correctional Institution, where prison officials impounded three legal publications, Black's Law Dictionary, Post Conviction Remedies, Vol. 1, and Post Conviction Remedies, Vol. 2 (*see* Doc. 23 at 1; Doc. 24, Exhibits). Petitioner states that the materials were returned to him on August 29, 2007 (Doc. 23 at 1).

Petitioner also states that he was transferred to Taylor Correctional Institution on October 27, 2006, and from that time until April 9, 2007, when he completed a "modality program," he was denied access to the law library (Doc. 23 at 2). Petitioner states he was transferred to the Taylor Work Camp from May 17, 2007 to June 16, 2007, and the work camp had no legal resources available (*id.*). Petitioner further states that he was in the Taylor Correctional Institution Annex from June 16, 2007 to August 17, 2007 (*id.*). He states he was in the infirmary from August 17–20, 2007, and then released to the compound at Taylor C.I. (*id.*). Petitioner states "despite written

request to the law library," he was denied access to the law library and law clerks until January of 2008, when there was "a change of librarian" (*id.*).

"The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment." Akins v. United States, 204 F.3d 1086, 1090 (11th Cir. 2000). To show an impediment which would trigger the later commencement date for the one-year period, Petitioner must demonstrate both actual harm or injury, that is, that he was actually prevented from exercising his right of access to courts to attack his sentence or conditions of confinement, and that the impediment was unconstitutional because not "reasonably related to legitimate penological interests." *Id.* at 1090 (quoting Lewis v. Casey, 518 U.S. 343, 361, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)) (other citations omitted).[2]

In the instant case, Petitioner has not shown that prison officials actually prevented him from accessing the law library, nor has he shown a causal connection between the late filing of his federal petition and a lack of access to the law library or other legal resources. Initially, Petitioner does not allege he was denied access to legal resources during the five-month period between the date his conviction became final and the date he filed his Rule 3.850 motion, during which time the federal limitations period was running. Additionally, Petitioner has failed to show he made sufficient efforts to access legal resources to establish that the State actually prevented him from filing his federal petition within the one-year limitations period. In his response to Respondent's answer, which Petitioner did not sign under penalty of perjury, Petitioner alleges that from November 3, 2006 to April 9, 2007, he was assigned as a medical orderly and to the "modality program," and he spent from 4:30 a.m. to 1:30 p.m. in the medical department, then went to the modality program, and returned to the medical department at 7:00 p.m. (Doc. 23 at 2). He states he faced disciplinary action if he missed the modality program, and he generally asserts he was denied access to the law library and other legal resources during that time, but he does not state that he ever formally requested either physical access to the law library or access to legal materials, or that he otherwise

---

[2]Akins involved the one-year time limit for filing a 28 U.S.C. § 2255 motion, which similarly provides for later possible commencement dates. *See* § 2255 ¶ 6, subsection (2) (commencing the time from the date a government created unconstitutional impediment to filing is removed, if the movant was prevented from making a motion by such governmental action).

Case No.: 4:08cv40/SPM/EMT

communicated his need for such access to prison officials. Additionally, five weeks elapsed between his completion of the modality program on April 9, 2007, and his transfer on May 17, 2007 to the work camp, which allegedly had no legal resources, but Petitioner does not allege he made any attempt to access the law library or other legal resources during that time (*id.*). Likewise, he does not allege he made any attempt to access the law library during the two-month period he was in the Taylor C.I. Annex, from June 16 to August 17, 2007 (*id.*). Although Petitioner states he was released to general population on August 20, 2007, and "[d]espite written request to the law library, I was denied access to the law library and law clerks until January 2008, when there was a change of librarian," this vague assertion of a written request and his conclusory allegation that he was "denied access," devoid of specific factual allegations or evidence showing when the request was submitted, to whom, the nature of the request (that is, whether he requested specific legal materials from the library or physical access thereto), and whether he pursued additional administrative remedies to obtain access to the library, are insufficient to establish that a State-created impediment prevented him from filing his federal petition until January of 2008.

Finally, Petitioner has failed to show that access to the law library, law clerks, and his three legal publications, was necessary to file his federal petition. The federal petition form requires only a statement of each claim and the facts supporting each claim, and it specifically instructs petitioners that they should not include legal argument or citation to legal authority. Furthermore, the court notes that three of the four grounds asserted by Petitioner in his federal petition were raised in his Rule 3.850 motion, and Petitioner does not allege that he was unable to obtain a copy of his Rule 3.850 during his incarceration at Taylor C.I.. With regard to the fourth federal claim, Petitioner does not allege that the lack of access to the law library and law clerks prevented him from discovering the claim, rather, he simply states he did not become aware of the basis for the claim until after the state court ruled on his 3.850 motion and he "received his records" (*see* Doc. 1 at 9–10). Furthermore, according to Petitioner, his legal publications, including two volumes of a treatise on post-conviction remedies, were returned to him on August 29, 2007. Therefore, Petitioner has failed to show that the lack of access to a law library actually prevented him from completing and filing at least an unpolished federal petition form prior to January of 2008.

The undersigned therefore concludes that Petitioner has failed to demonstrate that a State-created impediment prevented him from filing his federal petition prior to January of 2008. Thus, he has failed to show that section 2244(d)(1)(B) is the appropriate statutory trigger for the federal limitations period. Petitioner does not allege that his claims are based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review or that he could not have discovered the factual predicate of his claims prior to when his conviction became final; therefore, the statute of limitations must be measured from the remaining statutory trigger, which is the date on which his conviction became final. *See* 28 U.S.C. § 2244(d)(1). As previously discussed, Petitioner's conviction became final on May 16, 2005; therefore, the limitations period began on that date and expired one year later, on May 16, 2006.

This court must next address whether the limitations period was tolled pursuant to statutory or equitable tolling principles. Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows that one hundred sixty (160) days elapsed from May 16, 2005, the date Petitioner's conviction became final, to October 24, 2005, the date he filed his first post-conviction motion. That motion remained pending until March 14, 2007, upon issuance of the appellate court's mandate affirming the trial court's denial of the motion. *See* Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (where Florida petitioner appeals trial court's denial of post-conviction application, application remains pending until issuance of the mandate by the appellate court). The federal limitations period expired two hundred five (205) days later, on October 6, 2007; however, because that date fell on a Saturday, Petitioner had until Monday, October 8, 2007, to file his petition. Petitioner did not file his federal petition until over three months later, on January 24, 2008. Therefore, it was untimely.

To the extent Petitioner contends he is entitled to equitable tolling of the limitations period during the temporary lack of access to his legal publications and a lack of access to the law library, he has failed to demonstrate an entitlement to tolling. "Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked

to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). However, equitable tolling is an extraordinary remedy that is applied sparingly; indeed, it is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also* Wade v. Battle, 379 F.3d 1254, 1264–65 (11th Cir. 2004) (quoting Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) and Sandvik, *supra*). "The focus of the inquiry regarding 'extraordinary circumstances' is 'on the circumstances surrounding the late filing of the habeas petition' and not on the circumstances of the underlying conviction, and whether the conduct of others prevented the petitioner from timely filing." Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006) (quoting Helton, 259 F.3d at 1314–15) (other citations omitted)). Furthermore,

> To show diligence, a petitioner claiming deficiencies in the prison law library must provide details of the specific actions taken toward filing the petition. He must show 'when he found out about the library's alleged deficiency,' must 'state any independent efforts he made to determine when the relevant limitations period began to run,' and must demonstrate how the prison 'thwarted his efforts.' Absent such evidence, the connection between the petitioner's untimely filing and any alleged inadequacies in the library is insufficient.

Arthur, *supra* (quoting Helton, 259 F.3d at 1314). The burden of establishing entitlement to this extraordinary remedy rests with Petitioner. Wade, *supra*; Drew, *supra*.

In the instant case, Petitioner's allegations of transfers to various institutions and various units within Taylor C.I. over a period of one year from August of 2006 to August of 2007, his assignment as a medical orderly and to a "modality program" for several months during that time, and the lack of access to the law library and other legal resources during that time do not constitute extraordinary circumstances. Petitioner fails to allege specifically or present evidence that his transfers, assignments, and lack of access to the library were extraordinary or anything other than routine.

Furthermore, Petitioner has failed to show he made diligent efforts to timely file his federal petition. He generally states he was denied access to the law library and other legal resources until he completed the "modality program" on April 9, 2007, and he states there were no legal resources available in the Taylor Work Camp from May 17, 1007 to June 16, 2007, but he does not allege that

he formally requested access to the law library, by requesting either materials from the library or physical access to the library, during that time, or that he made other independent efforts to determine when the federal limitations period began to run or to file his federal petition on time. Although Petitioner states that after he was released to the general compound on August 20, 2007, he submitted a written request to the law library, he does not provide any specifics with regard to this request, for example, when it was submitted (before or after the limitations period expired on October 8, 2007), to whom it was submitted, the nature of the request (that is, whether he requested specific legal materials from the library or physical access thereto), and whether he pursued additional administrative remedies to obtain access to the library. Furthermore, as previously noted, Petitioner states his two-volume treatise on post-conviction remedies was returned to him on August 29, 2007, more than five weeks prior to expiration of the limitations period, and he has not shown that this resource was inadequate to enable him to file at least a bare bones petition. Therefore, Petitioner has failed to demonstrate he is entitled to equitable tolling of the limitations period. *See* Helton, 259 F.3d at 1314 ("Helton fails to state any independent efforts he made to determine when the relevant limitations period began to run, let alone that the DeSoto Correctional Institution somehow thwarted his efforts. Thus, the record evidence is insufficient to support a connection between Helton's untimely filing and any alleged inadequacies in the prison library."); *see also* Paulcin v. McDonough, 259 Fed. Appx. 211, 213 (11th Cir. 2007) (transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances, additionally, petitioner failed to allege how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding; therefore, equitable tolling of limitations period was not warranted); Bell v. Sec'y, Dept. of Corrections, 248 Fed. Appx. 101, 104–05 (11th Cir. 2007) (prisoner did not show diligence because there was no evidence that prisoner attempted to access the prison library or determine the applicable limitations period until after it expired);[3] Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (allegedly inadequate law library does not establish extraordinary circumstances warranting equitable tolling of the limitations period); *see also* Marsh

---

[3] The undersigned cites Paulcin and Bell only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* U.S. Ct. of App. 11th Cir. Rule 36-2, 28 U.S.C.A.

v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (neither inmate's ignorance of the law, nor inadequacy of services of inmate law clerk who helped draft habeas petition, nor fact that prison law library was closed for 15 days entitled petitioner to equitable tolling of limitations period); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("Mr. Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims. . . . It is not enough to say that the Minnesota facility lacked all relevant statutes and case law or that the procedure to request specific material was inadequate.").

Petitioner does not assert that he qualifies for any other exception to the time bar. Although the court permitted him to expand the record with a witness list filed by Petitioner's trial counsel in the underlying criminal case and statements from Albert Barber, Harold McIntyre, and Vera McIntyre, two of whom were listed as witnesses, it appears that Petitioner submitted this evidence in support of his first ground for relief, that he received ineffective assistance of counsel based upon counsel's failure to interview and call Mr. Barber and Mr. McIntyre as witnesses at trial (*see* Doc. 1 at 6, 6A, 6B; Doc. 12, Exs. G, H, I; Doc. 25, Attachments). Petitioner also submitted a memorandum from the Southeastern Community Blood Center regarding blood storage in support of his claim that he received ineffective assistance of counsel based upon counsel's failure to cross-examine a toxicologist regarding possible irregularities in the testing of a sample of Petitioner's blood due to lack of refrigeration of the sample (Doc. 1 at 10G–10I, Ex. A). In light of this court's conclusion that the federal habeas petition is untimely, Petitioner is not entitled to a merits review of the ineffective assistance of counsel claims. Therefore, consideration of evidence supporting the claims is not warranted. However, in light of Petitioner's assertion that there is a reasonable probability that the result of his trial would have been different if the jury had heard this evidence, the undersigned will liberally construe Petitioner's submissions as asserting a procedural claim of actual innocence.

In Schlup v. Delo, 513 U.S. 298, 324, 326–27 (1995), the Supreme Court set forth the standard of proof governing a habeas petitioner's procedural claim of actual innocence: the petitioner must show that constitutional error "probably resulted" in the conviction of one who is actually innocent. "To establish the requisite probability, the petitioner must show that it is more

likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

The Schlup Court went on to make several observations about this standard. With respect to the term "probably resulted," the Court clarified that, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*, 513 U.S. at 327, 330 (emphasis added). With respect to the term "reasonable juror," the Court instructed: "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*, 513 U.S. at 329.

Additionally, it is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. *See* Bousley v. United States, 523 U.S. 614, 623–24, 118 S. Ct. 1604, 1611–12, 140 L. Ed. 2d 828 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19, 120 L. Ed. 2d 269 (1992)). "[T]he district court should heed the Supreme Court's instruction that "[i]n cases where the State had forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." United States v. Montano, 398 F.3d 1276, 1285 (11th Cir. 2005) (quoting Bousley, 523 U.S. at 624).

In assessing the adequacy of the petitioner's showing, the district court "is not bound by the rules of admissibility that would govern at trial." Schlup, 513 U.S. at 329. Instead, the court is allowed also to consider "the probative force of relevant evidence . . . 'including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.*, 513 U.S. at 328 (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,

38 U. Chi. L. Rev. 142, 160 (1970)).  The Court also observed that when considering an actual innocence claim in the context of a request for an evidentiary hearing,

> the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial.  Obviously, the court is not required to test the new evidence by a standard appropriate for deciding a motion for summary judgment.  Instead, the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.

Schlup, 513 U.S. at 331–32.

In the recent decision of House v. Bell, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), the Court did not alter the standard set forth in Schlup.  It reiterated that standard, emphasized certain features of it, and evaluated the evidence developed in House's federal habeas proceeding under that standard.  The Court did note, as a preliminary matter, that the parties in that case did not dispute that House had presented new reliable evidence.  House, 547 U.S. at 537 ("There is no dispute in this case that House has presented some new reliable evidence; the State has conceded as much." (citations to record omitted)).  In addition, because the district court in House held an evidentiary hearing, a decision the State did not challenge, the Court cautioned that it had no occasion to elaborate on Schlup's observation that the court may consider how certain factors bear on the probable reliability of the petitioner's evidence.  House, 547 U.S. at 537.

In the instant case, Petitioner states that on September 2, 2001, he, the victim Stanley Smith, and two companions, Albert Barber and Harold McIntyre, were at a club (Doc. 1 at 6, 6A).  Stanley Smith became drunk and unruly, so Petitioner put him in the car to drive him home (*id.* at 6).  While Petitioner was driving home, his car left the road and struck a guard rail, and Stanley Smith was killed (Doc. 1 at 6, 10).  Petitioner was charged with DUI manslaughter (*id.* at 6, 10A–10B).

At the time of the offense, September 2, 2001, the Florida DUI statute provided, in relevant part:

> (1) A person is guilty of the offense of driving under the influence . . . if the person is driving or in actual physical control of a vehicle within this state and:
> . . . .
> (b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood;
> . . . .

>    3) Any person:
>
>    (a) Who is in violation of subsection (1);
>
>    (b) Who operates a vehicle; and
>
>    (c) Who, by reason of such operation, causes:
>    . . . .
>    3. The death of any human being commits DUI manslaughter, . . .

Fla. Stat. § 316.193 (effective Oct. 1, 2000 to June 30, 2002).

In his federal petition, Petitioner describes the testimony of several witnesses at trial. Petitioner states Mr. Romney Atkinson, a paramedic, testified that when he arrived at the scene of the accident, Petitioner was very upset, had lacerations to his chin and other minor abrasions, and smelled moderately of alcohol (Doc. 1 at 10-B). Mr. Ivey Gillette, another paramedic, testified that he drew a blood sample from Petitioner (*id.* at 10B–10C). Officer Brunzell Lawrence with the Florida Highway Patrol testified that he detected a moderate odor of alcohol on Petitioner's breath (*id.* at 10C–10D). Mr. Daniel Richardson, a toxicologist, testified that he conducted two tests on Petitioner's blood sample, and the results showed 0.218 and 0.219 grams of alcohol per 100 milliliters of blood (*id.* at 10D–10E).

In Ground One of his petition, Petitioner states Mr. Barber and Mr. McIntyre would have testified that Petitioner was not drinking before he left the club with the victim, and he was alert and in full control of the automobile when he left the parking lot and drove away (Doc. 1 at 6A). Petitioner states this testimony would have supported his theory of defense that alcohol impairment was not the cause of the accident (*id.* at 6B). In Ground Four, Petitioner asserts that the blood sample was not refrigerated during the sixteen days between the date the sample was drawn and the date it was tested, and the memorandum from the blood center shows that heat exposure may impact the alcohol content of blood and cause a "false high alcohol" reading (*id.* at 10G–10I).

The actual statements of Mr. Barber and Mr. McIntyre are not as helpful as Petitioner suggests. The statement of Harold McIntyre states that during the early evening of September 2, 2001, he and Petitioner were sitting on the tailgate of Mr. McIntyre's vehicle when the victim began to "harass" Petitioner to take him to Albert Barber's place of business (Doc. 25, Statement of Harold

McIntyre). Petitioner finally agreed to take the victim to Mr. Barber's business, and that was the last time Mr. McIntyre saw Petitioner and the victim that day (*id.*). The statement of Albert Barber states that Petitioner and the victim were at his place of business on the evening of the accident (Doc. 25, Statement of Albert Barber). He states he had a conversation with Petitioner, and Petitioner was "acting normal and in a good state of mind" (*id.*). The statement of Vera McIntyre states the following: (1) she has known Petitioner all his life, (2) Petitioner is a person of good morals and character, (3) Petitioner values God, family, and community, (4) Petitioner would never try to harm anyone, (5) Petitioner is diabetic and has experienced mental challenges, and (6) Petitioner always strived to be the best man he could be (Doc. 25, Statement of Vera McIntyre).

The memorandum from the blood center dated December 20, 2007, states that federal regulations require storage of red blood cell units at 1–6° C, storage of platelet components at 20–24° C, and storage of frozen products at below -18° C (Doc. 1, Ex. A). The memorandum further states that these storage practices ensure purity and potency of the final product, minimize microbial contamination and proliferation, and prevent or delay the detrimental physical and chemical changes that occur when blood or components are stored (*id.*).

None of the evidence submitted by Petitioner constitutes new reliable evidence of Petitioner's actual innocence. Initially, Petitioner has failed to provide any factual support for his assertion that the blood sample was not refrigerated. Although he apparently submitted a "property-control log" to the state post-conviction court and asserted that the fact that the log did not include an indication that the blood sample was refrigerated was proof that the sample was not refrigerated, the state court found that the lack of information regarding refrigeration did not constitute evidence that the sample was in fact unrefrigerated (*see* Doc. 1, Ex. B, Order Denying Motion for Postconviction Relief at 3). Petitioner did not submit the "property-control log" to this court, and even if he had, the lack of an indication that the blood sample was refrigerated, without more, is insufficient to raise a factual dispute as to whether the sample was refrigerated. Petitioner would need to proffer additional proof that the lack of an indication of refrigeration on the property log meant that the sample was unrefrigerated, for example, a statement by an individual with personal knowledge that refrigeration is routinely indicated on a "property-control log" when a blood sample is refrigerated. In the absence of such evidence, or any evidence suggesting that the blood sample

was otherwise impaired or the test results unreliable, the information from the blood center regarding proper storage does not constitute new evidence of Petitioner's actual innocence.

Additionally, the facts to which Harold and Vera McIntyre attest, namely, that Petitioner is a good person and complied with the victim's request to take him to Mr. Barber's place of business, have no relevance to the issue of whether Petitioner was under the influence of alcohol when he left Mr. Barber's business and began driving the victim home.  Therefore, neither statement is an "eyewitness account" that Petitioner was not under the influence of alcohol when the car he was driving left the road and struck a guard rail.  Mr. Barber's statement that he conversed with Petitioner before Petitioner left the club, at which time Petitioner acted "normal" and was in "a good state of mind," is arguably relevant to the issue of whether Petitioner appeared to be under the influence of alcohol when he began driving the victim home, but Mr. Barber's statement is so vague that its probative value is minimal.

In light of the highly damaging toxicology evidence and the undisputed evidence that Petitioner was driving the car which crashed into the guard rail, as well as the minimal evidentiary value of the blood center information and the statements of Mr. Barber, Mr. McIntyre, and Ms. McIntyre, the undersigned concludes that Petitioner has failed to show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.  Accordingly, Petitioner has not made a threshold showing of actual innocence to avoid a statute of limitations bar to review of his petition.

Accordingly, it is **ORDERED**:

Petitioner's motions to supplement his response (Docs. 24, 25) are **GRANTED**.  The court has considered the materials submitted by Petitioner.

And it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (Doc. 14) be **GRANTED**.

2. That the petition for writ of habeas corpus (Doc. 1) be **DISMISSED with prejudice** as untimely.

At Pensacola this 14th day of July 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**